NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-4697

_____

UNITED STATES OF AMERICA

v.

JONATHAN ALVARADO,
                              Appellant.

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 06-cr-00979-001)
District Judge:  Honorable Dennis M. Cavanaugh

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 15, 2011

Before:  RENDELL, JORDAN and BARRY, *Circuit Judges*.

(Filed: September 16, 2011)

_____

OPINION OF THE COURT

_____

JORDAN, *Circuit Judge*.

Jonathan Alvarado appeals a December 16, 2010 judgment of the United States District Court for the District of New Jersey sentencing him to 12 months' imprisonment for violating his supervised release. His counsel has moved to withdraw from representing him, citing *Anders v. California*, 386 U.S. 738 (1967). For the reasons that follow, we will grant the motion to withdraw and affirm the District Court's order.

I.    **Background**

On August 11, 2005, Alvarado pled guilty in the United States District Court for the Southern District of Florida to a "smash and grab" robbery. Prior to sentencing, Alvarado agreed to testify against his codefendants. The District Court in Florida, anticipating Alvarado's substantial assistance, departed downward from the Sentencing Guidelines' recommended 63 to 78 months' imprisonment and sentenced him to 38 months' imprisonment, to be followed by 3 years of supervised release. Defying expectations, Alvarado subsequently refused to testify.

Alvarado was released from prison on April 11, 2008. Shortly thereafter, the government again approached him, seeking his testimony against his codefendants. He agreed, and his supervised release was transferred to the United States District Court for the District of New Jersey so that he could testify on October 9, 2008. During the period between his release and scheduled appearance to testify, Alvarado violated probation by

2

failing to submit all of his required monthly reports, leaving his residence without informing his probation officer, working in unlawful employment,[1] and using marijuana.

Before he was supposed to testify, Alvarado fled his residence. A warrant for his arrest was issued on October 20, 2008. The Probation Office issued a Violation of Supervised Release Report (the "Report") on February 2, 2009, and Alvarado was eventually taken into custody in April 2009.

At a hearing on December 16, 2010, Alvarado admitted to having violated the conditions of his supervised release. The District Court asked him whether he had consulted with counsel, but the Court did not ask whether he had had an opportunity to review the Report. The Court also explained to Alvarado the consequence of waiving his right to a hearing and the likely sentencing ramifications of his admissions. It did not, however, mention waiver of rights related to confronting witnesses, compelling process, or testifying in his own defense.

Ultimately, the District Court sentenced Alvarado to 12 months' imprisonment for his violations of supervised release. It explained that that sentence, which exceeded the upper end of the Guidelines range by three months, represented an upward departure pursuant to U.S.S.G. § 7B1.4, application note 4, which provides that, "[w]here the original sentence was the result of a downward departure (e.g., as a reward for substantial

---

[1] According to the Probation Office, Alvarado worked "'off the books' as a laborer," in violation of the condition that he work at a "lawful occupation." (Violation of

assistance), … an upward departure [in the sentence following the revocation of supervised release] may be warranted." U.S.S.G. § 7B1.4, app. n. 4.

On December 20, 2010, Alvarado filed a Notice of Appeal. His counsel subsequently moved to withdraw and filed an *Anders* brief in support of the motion. Alvarado did not file a *pro se* brief.

## II.    Discussion[2]

Under *Anders*, counsel may seek to withdraw from representing an indigent criminal defendant on appeal if there are no nonfrivolous issues to appeal. *United States v. Marvin*, 211 F.3d 778, 779 (3d Cir. 2000). We exercise plenary review to determine whether there are any such issues. *See Penson v. Ohio*, 488 U.S. 75, 80 (1988) (noting that, in the *Anders* context, a court must conduct "a full examination of all the proceeding[s]" (internal quotation marks omitted)). Whether an issue is frivolous is informed by the standard of review for each potential claim raised. *See United States v. Schuh*, 289 F.3d 968, 974-76 (7th Cir. 2002).

We implement *Anders* through our Local Appellate Rule ("L.A.R.") 109.2(a), which provides, in relevant part, as follows:

> Where, upon review of the district court record, counsel is persuaded that the appeal presents no issue of even arguable merit, counsel may file a motion to

Supervised Release Report, 2-3 (Feb. 2, 2009).)

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

4

withdraw and supporting brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), which must be served upon the appellant and the United States. The United States must file a brief in response. Appellant may also file a brief in response pro se. … If the panel agrees that the appeal is without merit, it will grant counsel's *Anders* motion, and dispose of the appeal without appointing new counsel.

3d Cir. L.A.R. 109.2(a) (2010). We make two principal inquiries when counsel proceeds under *Anders*: whether counsel has "adequately fulfilled" the requirements of L.A.R. 109.2(a), and whether an independent review of the record presents any nonfrivolous issues. *United States v. Youla*, 241 F.3d 296, 300 (3d Cir. 2001).

The first inquiry often turns, as it does here, on the adequacy of counsel's supporting brief. To be adequate, an *Anders* brief must do three things. First, it must "satisfy the court that counsel has thoroughly examined the record in search of appealable issues." *Id.* Second, it must identify issues that might arguably support appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Finally, it must "explain why th[ose] issues are frivolous." *Marvin*, 211 F.3d at 780. "Counsel need not raise and reject every possible claim[,]" but he or she must still conscientiously examine the record. *Youla*, 241 F.3d at 300.

In our second inquiry, we review the record to determine whether the appeal is frivolous, that is, whether it "lacks any basis in law or fact." *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 438 n.10 (1988). Although our review is independent, if the *Anders* brief appears to be adequate on its face, a "complete scouring of the record" is

unnecessary. *Youla*, 241 F.3d at 301. Instead, we may allow the *Anders* brief to guide our review. *Id.*

A. *Adequacy of the* Anders *Brief*

The *Anders* brief identifies three potential issues for appeal: whether the District Court committed Constitutional error by not inquiring whether the government had complied with the notice obligations of Rule 32 of the Federal Rules of Criminal Procedure; whether Alvarado's admission of conduct in violation of the conditions of his supervised release was knowing and voluntary; and whether, in sentencing Alvarado to a term of imprisonment above the Guidelines range, the District Court's later-transcribed explanation on the record at the hearing was sufficient to satisfy the "written statement of reasons" requirement. Having reviewed counsel's brief and the accompanying materials, we conclude that, although the analysis in counsel's brief is somewhat cursory, it demonstrates a sufficient review of the record. Accordingly, we confine our review to the portions of the record implicated by the *Anders* brief.

B. *Issues Raised in the* Anders *Brief*

1. *Failure to Inquire about Alvarado's Review of the Report*

Counsel cites as a potentially nonfrivolous issue the District Court's failure to expressly verify that Alvarado had read the Report and discussed it with his attorney after conviction and prior to sentencing, as required by Federal Rule of Criminal Procedure

32(i)(1)(A).[3] Because Alvarado did not raise the issue of Rule 32 compliance in the District Court, we review for plain error. *See United States v. Adams*, 252 F.3d 276, 278-79 (3d Cir. 2001) (reviewing for plain error an earlier unmentioned failure by the district court to comply with Rule 32). Plain error requires that there be "(1) error, (2) that is plain, and (3) that affect[s] substantial rights." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (internal quotation marks omitted). Additionally, even if these conditions are met, we may use our discretion to overturn a lower court only if "the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted). The "defendant has the burden to satisfy the plain-error rule." *United States v. Vonn*, 535 U.S. 55, 59 (2002).

Rule 32(i)(1)(A) applies to sentencing following a conviction, and Rule 32.1(b) prescribes the procedure to be followed when revoking supervised release. In the latter procedure, there is no requirement that a presentence investigation report be prepared, much less that a district court inquire as to whether the defendant has reviewed it. *Compare* Fed. R. Crim. P. 32.1(b) *with* Fed. R. Crim. P. 32(i)(1)(A); *see also Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (detailing the minimum due process requirements for revocation of parole). But even assuming that procedures required by Rule 32 should be followed in sentencing a defendant incident to a violation of the conditions of supervised

---

[3] Rule 32 provides that, after a conviction, the court at sentencing "must verify that the defendant and the defendant's attorney have read and discussed the presentence report

7

release, the record does not demonstrate any meaningful lack of notice here. At the revocation hearing, Alvarado admitted his violations and sought no additional time to review the Report. Because Alvarado's admissions comported with the Report, the record does not support the conclusion that he had had any problem reviewing the Report or that there had been any impingement on his ability to review the Report that could have been cured by the District Court's expressly inquiring regarding his review. Despite his present protestations, the issue is frivolous.

### 2. *Knowing and Voluntary Admission*

Counsel cites as another potentially nonfrivolous issue whether Alvarado's admission of having violated the conditions of his supervised release was knowing and voluntary. Here again, because Alvarado did not raise the issue in the District Court, we review for plain error. *Adams*, 252 F.3d at 278-79.

Revocation of supervised release does not implicate the "full panoply of rights due a defendant" in a criminal prosecution. *See Morrissey*, 408 U.S. at 480 (discussing revocation of parole). Accordingly, for a waiver of rights in the context of a revocation of supervised release to be knowing and voluntary, a district court need only address those revocation-related rights noted in Rule 32.1 of the Federal Rules of Criminal Procedure.[4] *See United States v. Barnhart*, 980 F.2d 219, 222 (3d Cir. 1992) (discussing

---

and any addendum to the report." Fed. R. Crim. P. 32(i)(1)(A).

[4] Rule 32.1(b) provides in relevant part:

revocation or probation); *see also, e.g.*, *United States v. Hodges*, 460 F.3d 646, 651 (5th

Cir. 2006); *United States v. Correa-Torres*, 326 F.3d 18, 22-23 (1st Cir. 2003); *United*

*States v. LeBlanc*, 175 F.3d 511, 515-17 (7th Cir. 1999).  In considering whether a district

court's colloquy as to the Rule 32.1 rights is sufficient to support a waiver of those rights,

we note that "waivers need not be accompanied either by any magic words or by a formal

colloquy of the depth and intensity required under Federal Rule of Criminal Procedure 11

(governing guilty pleas in criminal cases)." *Correa-Torres*, 326 F.3d at 23.  Rather, the

standard is whether waiver of those rights appeared knowing and voluntary under the

totality of the circumstances.  *Id.*; *Hodges*, 460 F.3d at 652; *LeBlanc*, 175 F.3d at 517.

Here, even assuming that the District Court erred by failing to discuss with

Alvarado all of the Rule 32.1 rights he was waiving, the record does not support the

---

(2) Revocation Hearing. Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction. The person is entitled to:

(A) written notice of the alleged violation;

(B) disclosure of the evidence against the person;

(C) an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear;

(D) notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and

(E) an opportunity to make a statement and present any information in mitigation.

Fed. R. Crim. P. 32.1(b)(2).

9

conclusion that the error affected his substantial rights. Alvarado's freely admitting his violations at the hearing strongly suggests his intention to waive any rights implicated by an adversarial revocation hearing. Thus, while Alvarado may be able to show error, he cannot show plain error. The issue, then, is frivolous.

### 3. *Written Statement of Reasons Requirement*

Counsel cites as a final potentially nonfrivolous issue whether the District Court erred in omitting from the Judgment and Commitment Order its reasons for departing upward from the Guidelines range, as contemplated by the Supreme Court in *Morrissey*. As with the two issues previously discussed, it does not appear from the record that Alvarado raised the issue in the District Court. But even if he could be excused from that failure and so avoid plain error review, application of a plenary standard of review, *see Barnhart*, 980 F.2d at 222, leaves him no better off.

To satisfy the procedural requirements discussed in *Morrissey* and its progeny, a district court must provide "a written statement … as to the evidence relied on and reasons for revoking" supervised release. *Morrissey*, 408 U.S. at 489 (setting forth due process requirements for revocation of parole) ; *see also Black v. Romano*, 471 U.S. 606, 613-14 (1985) (noting the utility of the written statement requirement in the revocation context: that it ensures "accurate factfinding with respect to any alleged violation and provides an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence."). Importantly, and contrary to Alvarado's assertion,

10

*Morrissey* does not require a court to explain in writing the reasons behind a specific sentence imposed upon revocation of supervised release, nor is there any statutory requirement of that sort. While 18 U.S.C. § 3553(c)(2) does call for a written statement of reasons for a sentence imposed after a conviction if that sentence is higher than recommended by the Sentencing Guidelines, that same requirement is not found in 18 U.S.C. § 3583(e), which governs the revocation of supervised release. Therefore, the District Court was not obligated by statute or by *Morrissey* to provide a written statement of its reasoning. Instead, in a revocation proceeding, a "district court simply must state on the record its *general* reasons under section 3553(a) for … imposing a more stringent sentence." *United States v. Blackston*, 940 F.2d 877, 894 (3d Cir. 1991). Here, the District Court explained its general reasoning for the upward departure during the hearing, and that was sufficient. Again, the issue is frivolous.

### III. Conclusion

For the foregoing reasons, we grant the motion to withdraw and affirm the District Court's judgment.